The Loesch & Green Construction Co. v. Commissioner.
Loesch & Green Constr. Co. v. Commissioner
Docket Nos. 32661, 33750.
United States Tax Court
1952 Tax Ct. Memo LEXIS 13; 11 T.C.M. (CCH) 1191; T.C.M. (RIA) 52351; December 11, 1952
*13 Reasonable salaries for petitioner's officers, in the several taxable years, determined. L. F. Loux, Esq., for the petitioner. John L. King, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The following deficiencies were determined against the petitioner: Year Ended
Docket
April 30th
Number
Tax
Deficiency
1946
32661
Income
$ 3,315.72
1947
32661
Income
13,506.63
1946
32661
Declared Value
Excess Profits
181.71
1946
32661
Excess Profits
13,552.10
1948
33750
Income
16,530.97
1949
33750
Income
17,856.19
The sole question presented is whether amounts paid by the petitioner as compensation for the services of officers were reasonable. Findings of Fact The facts stipulated are so found. The Loesch & Green Construction Co., the petitioner, is an Ohio corporation organized in 1925 with its principal place of business located in Cleveland, Ohio. The petitioner filed its tax returns for the fiscal years ending April 30, 1946, 1947, 1948, and 1949 with the collector of internal revenue for the 18th district of Ohio. The petitioner was organized in 1925 by George Loesch, Edward *14 H. Green and Howard H. Green, the son of Edward H. Green. Irving R. Lewis, Edward H. Green's son-in-law, acquired the interest formerly held by George Loesch when the latter died in 1927. Ernest M. Green, Edward H. Green's son, became an officer of the petitioner in 1927. Edward H. Green died in 1945 and his shares were acquired by his two sons, Howard H. and Ernest M. Green, and by Irving R. Lewis. In 1947 Hansen E. Green, Howard H. Green's son, and M. F. McQuilkin, a tax consultant, were made officers of the petitioner corporation. Prior to the incorporation of the petitioner the business was carried on by a partnership consisting of George Loesch and Edward and Howard Green. Until 1943 the petitioner's business consisted of driveway and road construction work. In that year Edward H., Howard H., and Ernest M. Green, and Irving R. Lewis organized two new corporations, - Brookpark Construction Company and Brookpark Factory Sites, Inc. Brookpark Construction Company took over the petitioner's smaller work. Brookpart Factory Sites, Inc. leased a tract of land to the petitioner and Brookpark Construction Company for office and storage space. The usable space available to the petitioner *15 and Brookpark Construction Company, after the move to the new location, was increased greatly. The officers of the petitioner and their tenure were as follows: Name
Office Held
From
To
Edward H. Green
President
Apr. 1925
11/17/45
Edward H. Green
Chairman of Board
Apr. 1925
11/17/45
Howard H. Green
Secretary-Treasurer
Apr.1925
12/22/45
Howard H. Green
President
12/22/45
Present
Irving R. Lewis
Vice President
2/19/27
Present
Ernest M. Green
Assistant Sec.-Treas.
3/10/27
12/22/45
Ernest M. Green
Secretary-Treasurer
12/22/45
Present
Hansen E. Green
Assistant Treasurer
1/7/47
Present
M. F. McQuilkin
Assistant Secretary
1/7/47
Present and the following named persons acted as directors of petitioner during the periods set opposite their names below: Name
From
To
Edward H. Green
Prior to 1940
11/17/45
Howard H. Green
Prior to 1940
Present
Ernest M. Green
Prior to 1940
Present
Irving R. Lewis
Prior to 1940
Present
Allison M. Gibbons
Prior to 1940
1/7/47
Hansen E. Green
1/ 7/47
Present
M. F. McQuilkin
12/22/45
Present
During the fiscal years ended April 30, 1940, through April 30, 1949, inclusive, *16 petitioner's stock was held as follows: Edward
Ernest
Hansen
Howard
Irving
M.F.
Year
Green
Green
Green
Green
Lewis
McQuilkin
Other
Total
1940
35
1
0
35
35
0
1
107
1941
35
1
0
35
35
0
1
107
1942
80
31
0
90
90
0
1
292
1943
110
31
0
120
120
0
1
382
1944
110
31
0
120
120
0
1
382
1945
110
31
0
120
120
0
1
382
1946
110
31
0
120
120
1
1
383
1947
0
67
1
157
157
1
0
383
1948
0
240
35
560
560
15
20
1,430
1949
0
300
51
680
680
20
49
1,780
The officers' salaries claimed by petitioner on its tax return and those allowed by respondent in his determination for the fiscal years ended April 30, 1946 to April 30, 1949, inclusive, are as follows: Fiscal Year Ended 4/30/46
Claimed on
Allowed by
Officer
Return
Respondent
Ernest M. Green
16,800
10,000
Irving R. Lewis
18,600
11,000
Edward Green
4,620
4,620
Fiscal Year Ended 4/30/47
Howard M. Green
$24,600
$15,000
Ernest M. Green
20,400
14,000
Irving R. Lewis
22,200
12,000
Hansen E. Green
3,200
3,200
M. F. McQuilkin
1,600
1,600
Fiscal Year Ended 4/30/48
Howard M. Green
$24,600
$15,000
Ernest M. Green
20,400
14,000
Irving R. Lewis
22,200
12,000
Hansen E. Green
9,600
3,200
M. F. McQuilkin
4,800
1,600
Fiscal Year Ended 4/30/49
Howard M. Green
$24,600
$15,000
Ernest M. Green
20,400
14,000
Irving R. Lewis
22,200
12,000
Hansen E. Green
12,000
3,200
M. F. McQuilkin
4,800
1,600
*17 In addition to the amounts paid to them by petitioner, Howard H. Green, Ernest M. Green, and Irving R. Lewis received salaries from Brookpark Construction Company and Brookpark Factory Sites, Inc. for their fiscal years ended April 30, 1946 to April 30, 1949, inclusive, as follows: Fiscal Year Ended 4/30/46
Company
Howard H. Green
Ernest M. Green
Irving R. Lewis
Brookpark Construction Co.
$ 7,200
$ 6,000
$ 6,000
Brookpark Factory Sites, Inc.
700
1,225
1,400
Fiscal Year Ended 4/30/47
Brookpark Construction Co.
$ 8,700
$ 7,500
$ 7,500
Brookpark Factory Sites, Inc.
400
700
800
Fiscal Year Ended 4/30/48
Brookpark Construction Co.
$15,900
$14,700
$14,700
Brookpark Factory Sites, Inc.
1,200
2,100
2,400
Fiscal Year Ended 4/30/49
Brookpark Construction Co.
$16,100
$14,300
$15,650
Brookpark Factory Sites, Inc.
1,200
2,100
2,400
During the fiscal years 1940 through 1944, the petitioner paid no dividends. From 1944 to 1949, inclusive, dividends were paid as follows: Cash
Stock
Year
Dividend
Dividend
1944
$ 2,292
$ 0
1945
2,292
0
1946
3,830
0
1947
5,745
0
1948
0
60,000
1949
5,340
14,300
*18 During the fiscal years ended April 30, 1940 to April 30, 1949, inclusive, the amounts claimed by petitioner as salary deductions for its officers, the salaries and wages paid to all other employees, and the average number of each, were as follows: Calendar
Number of
Paid to
Paid to
Number of Employees
Year
Officers
Officers
All Others
Maximum
Minimum
Average
1940
4
$ 3,665
$ 61,511
56
14
37
1941
4
10,705
130,563
73
36
57
1942
4
32,506
136,340
76
43
63
1943
4
32,312
111,870
66
29
46
1944
4
32,592
238,070
119
40
79
1945
4
32,317
265,060
116
64
86
1946
4
61,020
326,030
128
75
108
1947
5
72,000
514,160
249
134
183
1948
5
81,600
697,090
271
142
200
1949
5
84,000
556,930
210
116
151
The tax returns filed by petitioner for the fiscal years 1940 to 1949, inclusive, show officers' salary deductions as follows: Fiscal
Edward
Ernest
Howard
Irving
Hansen
M.F.
Year
Green
Green
Green
Lewis
Green
McQuilkin
1940
$1,000
$ 2,665
$ 0
$ 0
$ 0
$ 0
1941
3,805
1,900
2,500
2,500
0
0
1942
7,818
5,235
9,725
9,727
0
0
1943
7,750
5,275
9,655
9,632
0
0
1944
7,800
5,355
9,730
9,707
0
0
1945
7,750
5,280
9,655
9,632
0
0
1946
4,620
16,800
21,000
18,600
0
0
1947
0
20,400
24,600
22,200
3,200
1,600
1948
0
20,400
24,600
22,200
9,600
4,800
1949
0
20,400
24,600
22,200
12,000
4,800
*19 For the fiscal years ended 1940 to 1949, inclusive, the petitioner reported net taxable income as follows: As Reported
Year
on Returns
1940
($ 390)
1941
660
1942
5,900
1943
8,040
1944
15,900
1945
17,600
1946
19,690
1947
41,330
1948
36,640
1949
27,590
The depreciated values of capital assets used in the petitioner's business during the fiscal years ended 1940 to 1949, inclusive, were as follows: Depreciated
Year
Value
1940
$ 17,600
1941
22,510
1942
39,550
1943
37,890
1944
45,110
1945
41,250
1946
81,230
1947
120,710
1948
149,920
1949
218,480
The petitioner's gross receipts, amounts paid to officers and net income before deduction of officers' salaries are as follows: Net In-
come Before
Fiscal
Gross
Paid to
Deduction of
Year
Receipts
Officers
Off. Salaries
1940
$ 212,938
$ 3,665
$ 3,640
1941
205,929
10,705
12,684
1942
363,342
32,506
39,412
1943
294,090
32,312
40,872
1944
697,650
32,592
48,822
1945
722,540
32,317
50,833
1946
901,059
61,020
80,711
1947
$1,134,443
$72,000
$113,332
1948
1,426,404
81,600
118,240
1949
1,243,359
84,000
111,592
*20 The net working capital for the years 1940 through 1949 is as follows: Current
Current
Net Working
Year
Assets
Liabilities
Capital
4/30/40
$ 24,922.81
$ 46,656.38
($ 21,733.57)
4/30/41
29,128.56
54,513.18
(25,384.61)
4/30/42
52,195.12
70,535.49
(18,340.37)
4/30/43
44,561.47
48,849.86
(4,288.39)
4/30/44
42,157.57
48,523.83
(6,366.26)
4/30/45
84,372.93
78,884.98
5,487.95 4/30/46
140,778.45
162,190.69
(21,412.24)
4/30/47
148,342.78
187,426.40
(39,083.62)
4/30/48
167,068.60
161,654.25
5,414.35 4/30/49
174,108.08
198,670.67
(24,562.59)
Totals
$907,636.37
$1,057,905.72
($150,269.35)
Average
$ 90,763.64
$ 105,790.57
($ 15,026.94)
The summer was usually the petitioner's busy season. During the years in question, the petitioner was engaged in excavating, paving driveways, furnishing equipment to other contractors along with operators and fuel, compressor and sewer work, dynamiting and wrecking. Following the formation of Brookpark Construction Company in 1943, the petitioner engaged less in asphalt and cement paving for small homes. The petitioner did not permanently employ graduate engineers, but such persons *21 were hired for certain work. The firm's engineering work was done principally by its officers. One salesman was employed on a commission basis of 10 per cent which at times would be increased to 15 per cent. Personal contacts by the petitioner's officers resulted in some of its business as did public works contracts. Some work was done during the taxable years on a cost-plus-fixed-fee basis. The salaries of petitioner's officers were set at the annual meeting of the board of directors. The petitioner did not seek permission from the Government to raise salaries in the years 1942 to 1945. At times the petitioner's officers gave personal guarantees in obtaining bonds which were required of contractors for public construction and for some private work. Howard H. and Ernest M. Green, and Irving R. Lewis, made loans to the petitioner corporation at various times which were evidenced by 6 per cent notes. The stock of Brookpark Construction Company was owned by Ernest M. and Howard H. Green, Irving R. Lewis and one Clark. The officers made themselves available to this corporation when their services were needed. The stock of Brookpark Factory Sites, Inc. was owned by Howard H. and Ernest *22 M. Green and Irving R. Lewis. Ernest M. Green's duties as an officer and director of the petitioner consisted of supervision of office operation, preparation and tabulation of bids, computation of costs and detailed accounting, supervising work to be let, contacting customers, receiving necessary Government approvals, entering bids, and, in general, acting as the petitioner's financial director. He possessed the right to hire and fire employees. He had no set working hours but worked whenever the circumstances required. He traveled in Ohio and other States. He had some training in accounting derived from a correspondence course and prior employment in a bank. Howard H. Green was president of the petitioner corporation and was in charge of all equipment and its scheduling. He supervised the personnel, sought new business and advised on bids. He could hire and fire employees and acted as executive manager of outside operations. In 1947 and later years, some of his duties were shared with his son, Hansen E. Green. Irving R. Lewis was vice president of the petitioner and supervised the craft trades, such as iron, steel and carpenter work. He was primarily concerned with the petitioner's *23 bridge building and paving operations. He possessed the right to hire and fire employees. Hansen E. Green began working for the petitioner as a youth. He was inducted into the armed services in 1943 and left the service in August, 1946. Thereupon he returned to the petitioner's employment and was given charge of special equipment, trucks and assignment of men and equipment. He had the right to hire and fire personnel. He supervised construction and paving operations. M. F. McQuilkin was a certified public accountant. He was elected an officer of the petitioner in January, 1947, and acted as an actuary and accountant. He prepared financial reports, consulted on financial policies and prepared tax returns. He did not work solely for the petitioner but was employed by other clients. The following amounts represent reasonable salaries for the several officers in the several years: Officer
1946
1947
1948
1949
Howard H. Green
$16,000
$17,500
$17,500
$17,500
Irving R. Lewis
13,000
15,000
15,000
15,000
Ernest M. Green
13,000
15,500
15,500
15,500
Hansen E. Green
6,000
6,500
M. F. McQuilkin
4,800
4,800
Opinion VAN FOSSAN, Judge: *24 When we are confronted with a question of the reasonableness of officers' salaries, unless a clear case for revision has been made or the evidence fails to sustain the petitioner's burden of proof, we hesitate to substitute our judgment for that of the company officials who fixed the salaries. Frequently, however, we are satisfied that there is merit on both sides of the equation, i.e., the company has been unduly generous with its officers and the Commissioner has been unduly critical of the amounts fixed. We conceive the present case to be one of the latter type. The company was unduly generous but the Commissioner was unduly critical. Accordingly, we have found and set out in our findings of fact the amounts which the evidence, in our best judgment, justifies. These amounts are fixed after giving due weight to the duties and performance of the several officers, the financial policies and experience of the company, testimony of witnesses called in support of petitioner's case and all other facts presented to us. To enumerate these facts or to discuss critically the testimony would be of little benefit. A conclusion of fact, or a determination based on conflicting evidence or inferences *25 therefrom, is largely the result of a mental process often not susceptible to specification. In such a case the evidence leads you to say to yourself, - the correct amount is such and such a figure. The accuracy of the figures so found depends in a large part on the breadth of experience, the methods of approach and the fidelity to logic and reason of the one charged with the duty of determination. In the present case we have employed such factors faithfully. The amounts found are the result. These results were not fixed by an arbitrary splitting of the difference between the parties. They represent our judgment, buttressed by experience and based on all the evidence in the record. They are the amounts which we believe we would have fixed had we in the several years been charged with the duty of fixing reasonable salaries for the officers in question. Decisions will be entered under Rule 50.